UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA,  ]<br>                                                    ]<br>           Plaintiff,                      ]<br>v.                                                 ]<br>                                                    ]<br>PATRICK CURLEY,                  ]<br>                                                    ]<br>           Defendant.                 ] | Criminal No. 1:13-CR-000058-JAW |

### DEFENDANT'S RULE 12(b)(3)(B) MOTION TO DISMISS

Defendant Patrick Curley, by and through his counsel and pursuant to Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure, respectfully moves this Court to dismiss the one-count indictment in this matter. Defendant Curley requests oral argument on this Motion.

### BACKGROUND

On March 21, 2013, Curley was indicted on one count of violation of extortion, a crime punishable under 18 U.S.C. § 875(d). The indictment alleges, in full, as follows:

COUNT ONE
Extortion

From on or about April 27, 2010, to on or about August 3, 2010, in the District of Maine and elsewhere, defendant PATRICK M. CURLEY transmitted, in interstate commerce, communications containing threats to injure the reputation of the addressee or another. Specifically, he transmitted e-mails and telephone calls, and mailed or caused to be mailed letters through the United States Postal Service, to P.T. and other employees and agents of Vescom. These communications accused P.T. of illegal sexual harassment and discrimination against him. His intention when he transmitted these communications was to extort money from Vescom.

All in violation of Title 18, United States Code, Section 875(d).

(Indictment, Docket No. 2-1.)

Section 875(d) provides:

> Whoever, with intent to extort from any person, firm, association, or corporation, any money or other thing of value, transmits in interstate or foreign commerce any communication containing any threat to injure the property or reputation of the addressee or of another or the reputation of a deceased person or any threat to accuse the addressee or any other person of a crime, shall be fined under this title or imprisoned not more than two years, or both.

18 U.S.C. § 875(d). The statute does not define extortion.

### ARGUMENT

An indictment is insufficient if it (1) fails to contain the elements of the offense charged; (2) fails fairly to inform a defendant of the charge against which he must defend; or (3) fails to enable him to plead that future prosecutions for the same offense are barred by the acquittal or conviction dispositive of the first proceeding. *Hamling v. United States,* 418 U.S. 87, 117 (1974); *United States v. Vega Molina,* 407 F.3d 511, 527 (1st Cir. 2005).

The indictment in this case is insufficient because it fails to allege the elements of extortion under section 875(d). Specifically, it does not satisfy section 875(d)'s "wrongfulness" element. The indictment fails to allege that Mr. Curley's threat of litigation was wrongful, and that his claim of sexual harassment and discrimination was not legitimate. Moreover, as a matter of policy and constitutional law, a threat of litigation cannot constitute a wrongful threat.

In addition, the indictment fails to allege that Mr. Curley actually threatened litigation or any other action potentially harmful to an individual's reputation, fails to allege that Mr. Curley lacked the legal right to pursue litigation in the context of this situation, fails to allege that Mr. Curley specifically demanded anything of value from the individuals with whom he communicated, and fails to allege that Mr. Curley identified a *quid pro quo* in which he would refrain from following through if provided with the value sought. The actions alleged in the indictment, even if believed, lack the necessary specificity to meet the definition of extortion

identified in the statute under which the indictment is brought, and for this reason it should be dismissed.

## I. Section 875(d) Does Not Criminalize Threats That Are Not Wrongful.

### A. Extortion Requires Proof of a Wrongful Threat and a Wrongful Objective.

Like section 875(d), the Hobbs Act, 18 U.S.C. § 1951 (2013), also criminalizes extortion.[1] The First Circuit has recognized that extortion under the Hobbs Act contains a "wrongfulness" element that the Government must satisfy in one of two ways. *See United States v. Sturm*, 870 F.2d 769, 773 (1st Cir. 1989) (citing *United States v. Enmons*, 410 US 396 (1973)). An allegation that the defendant employed "wrongful means" to acquire the property he sought will suffice. Some "means," such as threats of violence or threats of force, are inherently wrongful. Where wrongful means are employed, whether the defendant had a claim of right to the property he sought is irrelevant. *See United States v. Kattar*, 840 F.2d 118, 123 (1st Cir. 1988).

However, not all "means" are inherently wrongful. *Sturm,* 870 F.2d at 773. Where the defendant employs legitimate means to obtain property, such as economic threats, the First Circuit has held that the Government must allege that the defendant's "ends" were wrongful. *Id*. That is, "[f]or purposes of the Hobbs Act, the use of legitimate economic threats to obtain property is wrongful only if the defendant has no claim of right to that property." *Id. See also*, *United States v. Clemente*, 640 F.2d 1069, 1077 (2nd Cir. 1981) ("Fear of economic loss is not an inherently wrongful means; however, when employed to achieve a wrongful purpose, its 'use' is wrongful.")

---

[1] The Hobbs Act defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2), and imposes criminal sanctions on those who "affect interstate commerce" by extortion. *See id*. at § 1951(a).

> B. Under Section 857(d), Extortion Requires Proof of a Wrongful Threat and a Wrongful Objective.

Two circuits and a district court in the Ninth Circuit have recognized that, as with the Hobbs Act, section 875(d) contains a "wrongfulness" element that requires proof either of wrongful means or wrongful ends. *See United States v. Jackson*, 180 F.3d 55 (2nd Cir. 1999) *reh'g granted*, 196 F.3d 383 (2d Cir.1999) (holding failure to instruct jury on wrongfulness element to be harmless error under *Neder v. United States,* 527 U.S. 1 (1999)), *cert. denied,* 530 U.S. 1267 (2000); *United States v. Coss*, 677 F.3d 278 (6th Cir. 2012); *United States v. Klos*, 2012 WL 4120413 (D. Ariz. 2012). There is no federal case law to the contrary.

In *Jackson*, the defendant was convicted of extortion in violation of section 875(d) after she threatened to damage an individual's reputation by revealing that she was his illegitimate child unless he paid her a sum of money. *Jackson*, 180 F.2d at 61-63. She appealed, arguing that the Government had failed to satisfy the wrongfulness element. The Government argued that section 875(d) did not contain a wrongfulness element, and that even if it did, "threats to injure another person's reputation are inherently wrongful." *Id.* at 66. The Second Circuit explained that it was "troubled that § 875(d) should be interpreted to contain no element of wrongfulness, for plainly not all threats to engage in speech that will have the effect of damaging another person's reputation, even if a forbearance from speaking is conditioned on the payment of money, are wrongful." *Id.* at 67.

The Second Circuit began with an analysis of section 875(d)'s legislative history to determine congressional intent. Recently, in *United States v. Coss*, the Sixth Circuit recognized and adopted the *Jackson* court's "well-reasoned, thorough opinion," which it described as follows:

> [In *Jackson*,] [t]he Second Circuit concluded that a "wrongfulness" requirement was implicit in 18 U.S.C. § 875(d) by analyzing the structure and substance of 18 U.S.C. § 875 as a whole, the ordinary meaning of extortion, and 18 U.S.C. § 875(d)'s legislative history. Its reasoning on each point is persuasive. The Second Circuit noted that each of the various subsections in 18 U.S.C. § 875 criminalizes conduct "that plainly is inherently wrongful." *Id.* at 67. Subsection (a) criminalizes a "demand or request for a ransom or reward for the release of any kidnapped person," 18 U.S.C. § 875(a), while subsections (b) and (c) both criminalize a "threat to kidnap" or a "threat to injure the person of another," 18 U.S.C. § 875(b), (c). That these subsections all criminalize "conduct that plainly is inherently wrongful" suggests that Congress also meant to criminalize "inherently wrongful" conduct in subsection (d)—that is "inherently wrongful" threats to property or reputation. *Jackson,* 180 F.3d at 67.
>
> The "intent to extort" element of § 875(d) supports the conclusion that Congress intended to criminalize only wrongful threats. While admittedly the statute does not define extortion, the term's plain meaning, as well as its definition in other statutory contexts, illuminates its significance with respect to § 875(d). As the Second Circuit noted, the definition of "extort" in *Black's Law Dictionary* is "[t]o gain by *wrongful* methods, to obtain in an unlawful manner . . . ." *Id.* at 69 (emphasis added). The Hobbs Act defines extortion as "obtaining of property from another, with his consent, induced by *wrongful* use of actual or threatened force, violence, or fear, or under color of official right." *Id.* at 67 (quoting 18 U.S.C. § 1951(b)(2)) (internal quotation marks omitted) (emphasis in original). As evidenced by the fairly extensive legislative history surveyed by the Second Circuit, there is strong evidence to suggest that Congress intended extortion to mean the same thing in 18 U.S.C. § 875 as it does in the Hobbs Act. *See Id.* at 68–70 (discussing how the predecessor to the Hobbs Act, the Anti–Racketeering Act of 1934, 18 U.S.C. § 420a–420e, was enacted almost contemporaneously with the predecessor to 18 U.S.C. § 875). Thus, by including "intent to extort" as an element of § 875(d), Congress linked the statute to the broader concept of extortion, which carries with it the use of a *wrongful* threat to procure something of value.

*United States v. Coss*, 677 F.3d 278, 284-85 (6th Cir. 2012).

The *Jackson* court went on to analyze the ways in which the Government may satisfy section 875(d)'s wrongfulness element. It held that like economic threats, *see Sturm*, 870 F.2d at 773, threats to reputation are not inherently wrongful, and will not automatically satisfy wrongfulness. *Jackson*, 180 F.3d at 70. *See also*, *Coss*, 677 F.3d at 284 n.10 (adopting Second Circuit's holding that threats to reputation are not inherently wrongful).

>For example, the purchaser of an allegedly defective product may threaten to complain to a consumer protection agency or to bring suit in a public forum if the manufacturer does not make good on its warranty. Or she may threaten to enlist the aid of a television "on-the-side-of-the-consumer" program. Or a private club may threaten to post a list of the club members who have not yet paid their dues. We doubt that Congress intended § 875(d) to criminalize acts such as these.

*Jackson*, 180 F.3d at 67. Like the First Circuit in *Sturm*, 870 F.2d at 773, the *Jackson* court recognized that, where legitimate threats are used, the Government may satisfy the element by establishing "wrongful ends," as where the defendant has no legitimate claim to the property he seeks.[2]

The First Circuit has not yet had occasion to consider the precise meaning of "extort" and "threat" in the context of section 875(d). But in *Sturm* and *Kattar*, the First Circuit was among the earliest circuits to recognize that the Hobbs Act contains a wrongfulness element. Like the Sixth Circuit in *Coss*, the First should adopt the well reasoned opinion in *Jackson*, holding that section 875(d) does not criminalize threats that are not wrongful.

---

[2] The *Jackson* court also explained that the Government may establish wrongfulness by showing that the legitimate threat had no nexus to a legitimate claim or objective. *Jackson*, 180 F.3d at 67. The court elaborated:
>There are significant differences between, on the one hand, threatened disclosures of such matters as consumer complaints and nonpayment of dues, as to which the threatener has a plausible claim of right, and, on the other hand, threatened disclosures of such matters as sexual indiscretions that have no nexus with any plausible claim of right. In the former category of threats, the disclosures themselves—not only the threats—have the potential for causing payment of the money demanded; in the latter category, it is only the threat that has that potential, and actual disclosure would frustrate the prospect of payment.
>. . .
>We conclude that where a threat of harm to a person's reputation seeks money or property to which the threatener does not have, and cannot reasonably believe she has, a claim of right, or where the threat has no nexus to a plausible claim of right, the threat is inherently wrongful and its transmission in interstate commerce is prohibited by § 875(d).

*Id.* at 70-71 (holding that the defendant's legitimate threat to reveal that she was the victim's illegitimate daughter, threat was wrongful where it lacked nexus to any legitimate claim to parental support).

## II.  The Threat of Litigation, Based Upon Alleged Civil Rights Violations, Is Not Wrongful and Cannot Constitute Extortion.

The indictment fails because the threat to file a lawsuit for alleged civil rights violations cannot constitute a wrongful threat for purposes of section 875(d). A contrary holding would render Section 875(d) unconstitutionally broad.

Various federal courts have held that the threat to file a lawsuit if a settlement demand is not paid is "extortion" under the Hobbs Act. Some of these cases are appeals of criminal convictions under the Hobbs Act. *See United States v. Pendergraft*, 297 F.3d 1198, 1205 (11th Cir. 2002) ("A threat to litigate, by itself, is not necessarily 'wrongful' within the meaning of the Hobbs Act."); *Sturm*, 870 F.2d at 773 (holding that use of "legitimate economic threats" to obtain property to which one has a claim of right cannot be wrongful under the Hobbs Act). In *United States v. Kattar*, the First Circuit identified threat of litigation as a "straightforward example of a lawful economic threat . . . where one party threatens litigation in order to persuade another party to honor a contract which the first party believes has been breached." *United States v. Kattar*, 840 F.2d 118, 123 (1st Cir. 1988).

Other cases involve appeals in actions under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*. Invariably, these courts have determined that the threat to file a lawsuit, <u>even if made in bad faith</u>, does not constitute extortion for purposes of a RICO violation. *See, e.g.*, *Vemco, Inc. v. Camardella,* 23 F.3d 129, 134 (6th Cir.1994) (holding that "[a] threat of litigation if a party fails to fulfill even a fraudulent contract . . . does not constitute extortion" and cannot constitute a predicate act under the statute); *First Pacific Bancorp, Inc. v. Bro,* 847 F.2d 542, 547 (9th Cir.1988); *I.S. Joseph Co. v. J. Lauritzen A/S,* 751 F.2d 265, 267–68 (8th Cir.1984) (holding that, even if made in bad faith, a threat to sue is not a federal crime); *DirectTV, Inc. v. Cavanaugh, 321 F. Supp. 2d 825, 834-35 (E.D. Mich.*

7

*2003)* (stating, "[g]enerally, a threat to file a lawsuit, even if made in bad faith, does not constitute extortion."); *G–I Holdings, Inc. v. Baron & Budd,* 179 F.Supp.2d 233, 259 (S.D.N.Y.2001) (noting that "[t]hreats of litigation, and even threats of meritless litigation or the actual pursuit of such litigation, have been held not to constitute acts of extortion."); *Heights Cmty. Cong. v. Smythe, Cramer Co.,* 862 F.Supp. 204, 207 (N.D.Ohio 1994) (holding that a "threat to sue unless an individual agrees to a settlement" is not extortion under the Hobbs Act); *Am. Nursing Care of Toledo, Inc. v. Leisure,* 609 F.Supp. 419, 430 (N.D.Ohio 1984) (threat of litigation is not a predicate act under RICO). *See also*, *Nakahara v. Bal,* No. 97 Civ.2027, 1998 WL 35123, at *7 (S.D.N.Y. Jan. 30, 1998) (noting that numerous courts in the Second Circuit and other jurisdictions have held that "the threat of litigation or the initiation of unjustified lawsuits constituting malicious prosecution cannot alone form a predicate act for purposes of RICO.")

In *Pendergraft*, two defendants were convicted of extortion in violation of the Hobbs Act based upon a threat to seek damages in a lawsuit against Marion County, Florida, unless settlement was paid. *Pendergraft*, 297 F.3d at 1205. The defendants intended to support their lawsuit with false affidavits. Appealing his conviction, Defendant Pendergraft argued that his conduct was not "wrongful" within the meaning of the Hobbs Act. The Eleventh Circuit agreed, and reversed the conviction. In its decision, the Eleventh Circuit noted that, for purposes of the Hobbs Act, "wrongfulness" requires the use of wrongful *means* to achieve a wrongful *end*. *Id*. at 1205. In turning to the wrongful means element, the court explained that the threat of civil litigation is not itself "wrongful" and that the defendant had not resorted to wrongful means in seeking to achieve his end. *Id.* at 1206.

> [T]he fear of economic loss is an "animating force of our economic system, and, therefore, is not inherently wrongful. . . . After all, under our system, parties are

>encouraged to resort to courts for the redress of wrongs and the enforcement of rights. For this reason, litigants may be sanctioned for only the most frivolous of actions. These sanctions include tort actions for malicious prosecution and abuse of process, and in some cases recovery of attorney's fees, but even these remedies are heavily disfavored because they discourage the resort to courts.

*Id.* at 1206 (internal citations omitted). The *Pendergraft* court concluded that the defendants' threat to file suit, even if made in bad faith, and even if supported by false affidavits, was not "wrongful" within the meaning of the Hobbs Act, and did not constitute extortion. *Id.* at 1207.

The Eighth Circuit employed similar reasoning in *I.S. Joseph Co., Inc. v. J. Lauritzen A/S*, 751 F.2d 26 (8th Cir. 1984), a RICO case alleging illegal extortion. There, the defendants had threatened the plaintiffs with a lawsuit unless the plaintiffs agreed to pay several debts the defendant owed to third parties. *Id.* at 266. The plaintiffs refused, and then sued the defendants for RICO violations, claiming that the threats of suit constituted extortion. *Id.* at 267. The Eighth Circuit concluded that extortion had not occurred, even if the threat to sue "was groundless and made in bad faith." *Id.* It noted that "[s]uch conduct may be tortious under state law," but declined "to expand the federal extortion statutes to make it a crime." *Id.* The court concluded by warning that a holding otherwise might lead citizens to "feel that their right of access to the courts of this country had been severely chilled. . . . If a suit is groundless or filed in bad faith, the law of torts may provide a remedy. Resort to a federal criminal statute is unnecessary." *Id.*

In this case, Mr. Curley is alleged to have threatened lawsuit against individuals whom he alleges sexually harassed and discriminated against him during a job interview. In other words, Mr. Curley is alleged to have threatened to avail himself of the American judicial system based on his claimed civil rights violations. This conduct cannot constitute extortion. As the courts in *Pendergraft* and *I.S. Joseph Co.* recognized, to hold otherwise could discourage citizens from

9

exercising their right to litigate their claims in court and could criminalize conduct that is more appropriately dealt with in the civil area, with malicious prosecution or abuse of process claims.

### III. The Indictment Is Insufficient for Its Failure to Allege Wrongfulness.

#### A. The Indictment Does Not Allege that Mr. Curley Employed Inherently Wrongful Threats.

As the federal courts cited above have consistently recognized, a threat to reputation is not inherently wrongful. In this case, the indictment simply alleges that Mr. Curley threatened "to injure the reputation of the addressee or another." (Document No. 2-1.) This bare assertion is clearly insufficient, on its own, to satisfy section 875(d)'s wrongfulness element. Mr. Curley is alleged to have accused two individuals of sexual harassment and discrimination during the course of a job interview. The indictment goes on to suggest that Mr. Curley threatened the reputations of the individuals involved in the interview. The alleged threats to reputation are derived only by implication; Mr. Curley did not specifically threaten the reputations of either individual, and the Government does not establish a sufficiently precise nexus between any statement actually made by Mr. Curley (whether electronic or otherwise) and the potential "injury to reputation" asserted in the indictment. Also, it is not inherently wrongful to raise a legal claim that carries as a possible collateral consequence an impact upon an individual's reputation. The indictment simply asserts that Mr. Curley "accused P.T. of illegal sexual harassment and discrimination." That statement carries the implication that litigation might follow, but that was not Mr. Curley's statement and the indictment does not allege otherwise.

The indictment also fails because it does not allege that Mr. Curley specifically demanded anything of value in exchange for his not carrying through with the implied litigation. The indictment carries the naked assertion that Mr. Curley's "intention was to extort money from

Vescom." Once again, however, there is a lack of any specific allegation involving actual statements by Mr. Curley, and his intent can only be inferred.

> B. <u>The Indictment Does Not Allege that Mr. Curley Had No Legitimate Basis for His Claim that the Individuals Sexually Harassed and Discriminated Against Him</u>.

As described above, if a threat is not inherently wrongful, the wrongfulness element requires the Government allege that the defendant's objective was wrongful. In this case, the indictment does not allege that Mr. Curley had no legitimate basis for his claims that "P.T." illegally sexually harassed and discriminated against him.

Whether Mr. Curley's claims would ultimately have prevailed is not determinative. The factual accuracy of his claims is not of immediate relevance. Instead, it is relevant, and fatal to the indictment, that both sexual harassment and discrimination are legally cognizable <u>potential</u> claims of injury, which avail individuals of the litigation process and in turn allow claims either to succeed or fail on their own merits. The fact that Mr. Curley's accusations set forth legally recognized claims undermines the indictment. Even if it is assumed that Mr. Curley threatened litigation and that the threat of litigation carries with it an implied threat to reputation, the threat is not itself inherently wrongful, for the reasons explained by the Second and Sixth Circuits. *See Jackson*, 180 F.3d at 70; *Coss*, 677 F.3d at 284 n.10. The indictment fails because it does not allege that Mr. Curley had no right to the claims he made, or that he lacked the right to seek the remedies potentially available to him if his claims were successfully litigated.

> C. <u>The Indictment Does Not Allege that Mr. Curley's Legitimate Threat Had No Nexus to His Legitimate Claim</u>.

The *Jackson* court recognized that wrongfulness may be satisfied by a lack of nexus between a legitimate threat and a legitimate objective. In this case, there is a perfectly reasonable nexus between Mr. Curley's alleged threat—to bring civil lawsuit—and his claim—that the

individuals sexually harassed him and discriminated against him during a job interview. The indictment fails to allege that Mr. Curley's statements lacked a nexus to the legal claims he raised, that there was no connection between the actions threatened by Mr. Curley and the legal avenues and remedies available to him for the injuries he claimed.

Mr. Curley is alleged to have accused other individuals of sexual harassment and discrimination. The indictment simply alleges that Mr. Curley accused an individual of illegal actions, and presumes in the absence of a specific statement that he was seeking money to refrain from litigating those claims. Section 875(d) requires additional proof that a threat either lacked a nexus to a claim of right or that the defendant had no claim of right to the property he sought. *Jackson*, 180 F.3d at 70. The indictment in this case alleges neither.

## CONCLUSION

For the foregoing reasons, Defendant Patrick Curley requests that this Court dismiss the indictment, on the grounds that it fails to allege the elements necessary to meet the definition of extortion set forth in 18 U.S.C. § 875(d). Defendant Curley requests oral argument on this Motion.

Dated: September 10, 2013

Respectfully submitted,

*/s/ Charles F. Budd*
Charles F. Budd, Jr.
Colin E. Howard
Rudman Winchell
Attorney for Patrick Curley
84 Harlow Street
P.O. Box 1401
Bangor, ME 04402-1402
(207) 947-4501
CBudd@RudmanWinchell.com
CHoward@RudmanWinchell.com

CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2013, I electronically filed DEFENDANT'S RULE 12(b)(3)(B) MOTION TO DISMISS with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

    Gail Fiske Malone, Esq., Assistant United States Attorney.

Dated:   September 10, 2013

    */s/ Charles F. Budd*
    Charles F. Budd
    Rudman Winchell
    Attorney for Patrick Curley
    84 Harlow Street
    P.O. Box 1401
    Bangor, ME 04402-1402
    (207) 947-4501
    CBudd@RudmanWinchell.com